| | | |
|---|---|---|
| **JANET PATTERSON and,** | ) | |
| **HAROLD PATTERSON,** | ) | |
| | ) | **Case No. _____** |
| **Plaintiffs,** | ) | |
| | ) | **JURY DEMAND** |
| **v.** | ) | |
| | ) | |
| **BEACON HILL VILLAGE** | ) | |
| **CONDOMINIUM ASSOCIATION, INC.,** | ) | |
| **GARY ESTES, BRENDA ESTES, and** | ) | |
| **DAVID FLOYD,** | ) | |
| | ) | |
| **Defendants.** | | |

# COMPLAINT

Plaintiffs, by and through their attorneys, Larry L. Crain and Kathy T. Trawick, files this complaint against Defendants as follows:

## I.

## NATURE OF THE ACTION

1. This action is brought by Janet and Harold Patterson, (hereafter "Plaintiffs") to enforce the provisions of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq*.

2. Defendants, Beacon Hill Village Condominium Association, neighbors Gary Estes and Brenda ("Virginia") Estes, and property manager David Floyd have discriminated against Plaintiffs by wrongfully refusing Plaintiffs' request to provide Mr. Patterson with a reasonable accommodation based upon his disabilities.

3. Defendants, through their policies, practices, and procedures, have violated the Fair

1

Housing Act, as amended (hereafter "FHA"), 42 U.S.C. § 3601, *et seq.*, by failing to permit reasonable modifications as requested by a disabled resident.

4. Plaintiffs seek declaratory, injunctive, and monetary relief with respect to Defendants' violation of the Fair Housing Act.

## II.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all federal claims in the Complaint arising under the Fair Housing Act, 42 U.S.C. § 3613, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4). This Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue lies in this federal District pursuant to 28 U.S.C. § 1391. The Defendants and the Plaintiffs are located in this District. All events giving rise to this action occurred in this District.

## III.

## PARTIES

### A.    PLAINTIFFS

7. Plaintiff Janet Patterson is an adult citizen and resident of the United States who, at all times pertinent to this case, resided in Wilson County, Tennessee, in the residential community known as Beacon Hill Village.

8. Plaintiff Harold Patterson is an adult  citizen and resident of the United States who, at all times pertinent to this case, resided in Wilson County, Tennessee, in the residential community known as Beacon Hill Village.

9. Mr. and Mrs. Patterson reside at 231 Green Harbor Road, Unit 89, Old Hickory,

2

Tennessee 37138. Their unit is a three story townhome within a condominium community with a rear access unfinished basement.

10. Mr. Patterson is a person with a handicap (hereafter referred to as "a disability") as defined by 42 U.S.C. §§ 3602(h)(1) – (3), and a person with a disability as defined by 42 U.S.C. § 12102, in that he has a physical impairment which substantially limits one or more of his major life activities, he has a record of such an impairment, and Defendants regarded him as having such an impairment.

11. Mr. Patterson is substantially limited in his ability to engage in several major life activities including, but not limited to, walking, standing, and climbing stairs.

12. Mr. Patterson suffers from hypoxic brain injury. He is unable to negotiate stairs due to significant physical and mental limitations. Mr. Patterson suffers from poor balance and depth perception deficits.


**B.     DEFENDANTS**

13. Upon information and belief, Defendant Beacon Hill Village Condominium Association Inc., ("BHVC") a homeowners' association in a residential community consisting of 129 units existing pursuant to the laws of the State of Tennessee, and  the HOA is the administrative body for  Beacon Hill Village.

14. Upon information and belief, Defendant Gary Estes is, and was at all times relevant to this action, was a member of the Board of Directors to manage Beacon Hill Village.  As such, he was authorized by BHVC to carry out the management of the community, as well as make on-site decisions affecting Beacon Hill Village, including approval of plans for modifications to properties within the community as he was the liaison to the

architectural review committee (ARC). As Board member of Beacon Hill Village, Mr. Estes is also responsible for complying with all state, federal, and/or local laws relating to Fair Housing.

15. Upon information and belief, Defendant Gary Estes is, and was at all times relevant to this action, residing in the condominium adjacent to the Plaintiffs. As such, his signature was required for the Pattersons to move forward with the modification of their home. Acting in his capacity as neighbor, and at the demand of his wife, Defendant signed and then withdrew his signature for said document.

16. Upon information and belief, Defendant Brenda ("Virginia") Estes is, and was at all times relevant to this action wife of Gary Estes and neighbor to the Plaintiffs. As such, she refused to sign the authorization for the Patterson's to move forward with their remodeling of their home because she did not want children living next door.

17. Defendant David Floyd owns and operates the day-to-day operations of David Floyd & Associates Property Management Company. In this capacity, Defendant Floyd sent the Plaintiffs the denial of their reasonable modification request.


**IV.**

**STATEMENT OF FACTS**

18. Plaintiffs, at all times pertinent to this action, resided at 231 Green Harbor Road, Unit 89, Old Hickory, Tennessee 37138 in the residential community known as Beacon Hill Village. Beacon Hill Village residential homes were, and are, "dwellings" within the meaning of 42 U.S.C. § 3601 *et seq*.

19. Plaintiffs' townhome style condominium is a three story residential dwelling that consists

of a main floor with the living space, an upstairs floor with the bedrooms and bathrooms, and a full unfinished basement that is only accessible by an outside door on the rear of the building. The design of the finished area is impossible to modify and allow for single floor living in the manner their proposed modification to the basement would.

20. At all times pertinent to this action, Plaintiff Harold Patterson has suffered from physical and mental limitations due to hypoxic brain injury.

21. The Plaintiffs purchased their home in Beacon Hill Village in 2001. It was classified as a townhome and they chose their specific unit based on the basement area that would be available for additional square footage or one story living as needed.

22. In 2007, Mr. Patterson suffered from a cardiac arrest. He was put on life support and was not expected to survive.

23. After discharge from the hospital Mr. Patterson was initially unable to return to his home in Beacon Hill Village because he was not able to negotiate the stairs due to significant physical and mental limitations because of hypoxic brain injury.

24. After further months of rehabilitation, Mr. Patterson was eventually able to return to his home in Beacon Hill Village.

25. Over the next ten years, Mr. Patterson did well at his home at Beacon Hill Village. However, Mr. and Mrs. Patterson looked for a one level home knowing that Mr. Patterson's limitations would eventually require a main floor bedroom and living area. But they never could find a property that they liked as much as their beloved home in Beacon Hill Village.

26. Since 2007, Mr. Patterson has experienced numerous falls due to poor balance and depth perception deficits.

5

27. Because Mr. and Mrs. Patterson loved their Beacon Hill Village home so much, they ended their search for another home and decided instead to make improvements and modifications for Mr. Patterson to accommodate his special needs. Their first improvement in the basement level was the installation of new flooring in 2015.

28. They then prepared a proposal to submit to the Architectural Review Committee (ARC) and the Beacon Hill Board of Directors (BOD) in order to complete the project of finishing the basement space for Mr. Patterson's unique needs.

29. Mr. and Mrs. Patterson's plans included finishing the basement with a bedroom, bathroom, kitchenette, living space, internal staircase, basement level doorways to the outside, and a deck. Having these amenities on one level would greatly assist Mr. Patterson live a comfortable life, as well as provide safe exit from the home in the event of a fire or medical emergency.

30. Mr. Patterson's bedroom is currently situated on the third floor in the rear of the home, and requires that he climb stairs each day.

31. The couple consulted with multiple architects and contractors, preparing to move forward with their project as soon as they received approval form the BOD. The Pattersons felt that the plans were reasonable and would not interfere with anyone's enjoyment of their property; and was a reasonable modification for Mr. Patterson's unique needs.

32. In April of 2017, the Pattersons approached Gary Estes, their next door neighbor in Unit 90; Mr. Estes was also a member of the BOD at that time. The Pattersons had questions about the process and the community guidelines.

33. Mr. Estes responded with enthusiastic and positive support and suggested how to initiate the process. He gave the Pattersons sympathetic support as a member of the board. He

said that other residents made similar request, specifically Todd Steely and Kenn Craig in Unit #54.

34. During that initial meeting in April of 2017, Mr. Estes spoke with the Pattersons for about an hour and told them to feel free to ask for any additional assistance anytime, as it was not a bother and that he was happy to help.

35. On May 20, 2017, the Plaintiffs prepared their proposal, along with signatures from all of their neighbors in their building, Units 87, 88, 90 as allegedly required by the Master Deed. The Pattersons followed all alleged requirements of the Beacon Hill Village Master Deed requirements.

36. However, later that day, as the Pattersons were going to submit their proposal to ARC Chairman Jerry Humphreys and to the Property Management representative Bill Riley, they were approached by Gary Estes, from Unit 90. Mr. Estes informed the Patterson's that he would need his signature page back.

37. Mr. Estes expressed as his reason for retracting his signature from the Patterson's project, that his wife Virginia Estes was very angry with him for not consulting her about signing the document and that she did not approve.

38. The Pattersons did not want to cause difficulty for their neighbors and so they proceeded to tear up the document with Mr. Estes' signature on it.

39. However, Mr. Estes encouraged the Pattersons to submit their completed proposal as usual and that he would withhold his influence on the BOD. Therefore, the Pattersons submitted a copy of their proposal to the ARC chair Jerry Humphreys and the Property Management representative Bill Riley. They explained that Mr. Estes retracted his signature, but that Mr. Estes told them move forward with the process and he would not

7

try to unduly influence the process.

40. The Plaintiffs anticipated that it would take about 45 days to get their project approved and Mr. Estes told them it may take longer due to the scope of their project.

41. During the same time period the BOD was attempting to make "new guidelines".

42. Through this forty five day waiting period in May and June, several neighbors approached the Pattersons asking them about their remodeling project. Sandy Sheehan from Unit 87 told the Pattersons that Mr. Estes had been by to ask her and other neighbors, if they would consider rejecting the Patterson's project, and told Ms. Sheehan and others that "children would be running around the building" if the Pattersons were granted their plans.

43. The unpleasantries with Mr. Estes continued, when Mrs. Patterson's adult daughter Katherine Harland had a very negative encounter with Mr. Estes. Ms. Harland and her family had just moved back to the Unites States after many years living abroad. She and her family were living with Mr. and Mrs. Patterson while they reestablished and reacclimated to living in the United States.

44. Sometime in June of 2017, Ms. Harland was out in the front yard when she noticed Mr. Estes. She inquired as to why Mr. Estes was trying to negatively influence neighbors and the BOD to reject the Pattersons project.

45. Mr. Estes responded very negatively: "You are not a resident here in our community. Virginia and I do not want to live next door to children. We would not have bought this condo if we knew you would move in with a child….and look at you, you're pregnant, again! We [the BOD] are going to try to make this an over 55 community."

46. Mr. Estes went on to state, "We may just have to move!"

8

47. As the Pattersons waited for a response from the ARC they spoke with another neighbor, Barb Knudsen from Unit 27. Mrs. Knudsen informed the Patterson's that she had heard from her husband that ARC Chair Jerry Humphreys had been approached by Mr. Estes; and Mr. Estes told Mr. Humphreys not to submit the Pattersons project to the BOD. According to Paul Knudsen's' conversations with Jerry Humphreys, Mr. Estes went on to tell Mr. Humphreys that he would never sign off on the project, that the Master Deed to the community supported his position, and that he was going to use his authority to thwart the progress of the Pattersons project.

48. Eventually the Pattersons learned that Mr. Humphreys and Bill Riley failed to submit their proposal to the BOD as they said they would.

49. By September of 2017, the 45 day waiting period had long passed, and the Pattersons still had not been given a response by the ARC or the BOD.

50. Therefore, the Pattersons called Mr. Estes, because he was a member of the BOD, and he told them that their proposal had not been considered because they did not disclose the name of the architect for the project and suggested the call Mr. Humphreys.

51. The Pattersons called Mr. Humphreys and were advised that he had sent them an email concerning their request, but had apparently been sent to the wrong email address. The email informed the Pattersons that they still needed the signatures from all of the neighbors, especially the homeowners on either side of their unit. Eventually, Mr. Humphreys sent the email to the correct email address.

52. The Pattersons also attempted to speak to Sue Cronin, the BOD President; however she never returned their phone calls.

53. And the Pattersons called Bruce Anderson, a BOD member. Mr. Anderson told the

Patterson's that he was not aware of their project and that Mr. Humphreys should have been in contact with them.

54. Finally on September 21, 2017, after four months of waiting, the Pattersons received an email from Mr. Humphreys. The email simply said that Mr. Humphreys was unable to forward their request to the BOD without Mr. Estes' signature.

55. With this email, the Pattersons realized that all of their efforts had effectively been thwarted and intentionally interfered with by Mr. Estes. Despite the fact that he had told the Pattersons that he would not cause any harm to their project and he would step back with the BOD, if the Pattersons would just allow him to retract his signature; which would help him get back on his wife's good side.

56. On September 21, 2017, the Pattersons wrote a lengthy email to each BOD member and the ARC Chairman to outline their project plans, their frustrations with the process, their previous attempts to reach out to the BOD, and their notice of intent to consult legal counsel.

57. On September 30, 2017, the Pattersons sent an email to all BOD members requesting a written decision from the BOD.

58. The Pattersons never received a written decision, however, they were invited to attend the next BOD meeting to discuss their proposal and ask any questions they may have.

59. On October 3, 2017, the Pattersons attended the BOD meeting. They were given 20 minutes to make their case .

60. Mr. Estes attended the October 3rd meeting, and was asked by David Floyd to introduce Mrs. Patterson to the BOD prior to presenting her case.

61. Property Manager David Floyd chaired the meeting.

10

62. When BOD member, Pat Wells, asked if David Floyd had consulted with legal counsel about their ability to develop their basement, Mr. Floyd responded in the affirmative.

63. Sue Cronin, President of the BOD, attended by speaker phone. However, she appeared to be misinformed about the Pattersons project. At the end of the Pattersons plea, Ms. Cronin stated that they were writing new guidelines and that they would get back to the Patterson's in two weeks.

64. On October 16, 2017, the Patterson's received the following email from Mr. Floyd: "After careful consideration , the Board has chosen to decline the request." Mr. Floyd did invite the Pattersons to resubmit a revised request, and that the new request for modification of their property would require the signatures of all owners of the building. Mr. Floyd told the Pattersons that if they did not have all the necessary signatures their project would not be considered.

65. The Plaintiffs wrote Mr. Floyd on October 17, 2017, asking several specific questions for clarification; however, they have never received a response.

66. The Pattersons reluctantly proceeded with their plans to secure another residence, and decided to purchase a new home that would better accommodate Mr. Patterson's special needs.

67. After purchasing a second home, the Pattersons learned that their neighbors Chuck and Julie Stanley in the next building over, submitted an almost identical project request to the BOD and ARC, and their proposal was approved in seven days.

68. Throughout the tedious application process, Ms. Patterson had a difficult time explaining to her husband the Defendants' discriminatory actions. When Mrs. Patterson explained to him that they would have to move for his safety, he refused to leave his home of

11

seventeen years.

## VI.

## <u>INJURY TO PLAINTIFFS</u>

69. Defendants' actions described above, caused Plaintiffs to suffer, and continue to suffer, irreparable loss and injury including but not limited to humiliation, embarrassment, emotional distress, and deprivation of the Plaintiffs' rights to equal housing opportunities regardless of handicapped status. Due to the grave risk caused by climbing stairs, Mr. Patterson was denied the freedom to navigate his home safely because of his poor balance and depth perception deficits due to hypoxic brain injury.

70. Defendants' actions described above caused Plaintiffs to be forced to look for safer living arrangements for Mr. Patterson and incurring at great expense, the purchase of a new home.

71. Defendants' denial of the Patterson's reasonable modification request has dramatically hastened the decline of Plaintiff's physical condition.

## VII.

## <u>CAUSES OF ACTION</u>
## <u>AS TO DEFENDANTS BEACON HILL CONDOMINIUM ASSOCIATION</u>

## <u>FIRST CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604 (f)(1)</u>

72. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 71 above.

73. In 1988, Congress amended the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* to extend the guarantee of fair housing to individuals with disabilities.

74. Plaintiff Harold Patterson is a person with handicaps under the Fair Housing Act, 42 U.S.C. § 3602(d) and (h), and has suffered damages and loss of civil rights as a result of Defendants' discriminatory conduct.

12

75. Defendants' actions described above constitute a violation of 42 U.S.C. 3604(f)(1), "……
to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a
handicap ….."

76. The denial of Plaintiffs' reasonable modification request to renovate their basement and
add a deck on to the rear of their condominium created a dangerous living situation for
Plaintiff Harold Patterson resulting in the need for Plaintiffs to seek alternative housing.


**SECOND CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604 (f)(2)**

77. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 76 above.

78. Defendants' actions described above constitute a violation of 42 U.S.C. 3604 § (f)(2),
"…. Discriminate against any person in the terms, conditions, or privileges of sale or
rental of a dwelling, ….. because of a handicap…,".

79. Defendants have approved basement renovations for non-disabled residents that are
similar or even more extensive than Plaintiffs' design.

80. Defendants have failed to penalize non-disabled residents of the community who
renovated their basement without prior consent of BHVC.


**THIRD CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604 (f)(3)(A)**

81. Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 80 above.

82. Defendants' actions described above constitute a violation of 42 U.S.C. § 3604 (f)(3)(A)
"…… discrimination includes (A) a refusal permit, at the expense of the handicapped
person, reasonable modifications of existing premises occupied ……  if such
modifications may be necessary to afford such person full enjoyment of the premises….".

13

83. Plaintiffs submitted plans to the Defendant HOA with a request to modify the basement area of their condominium and build a deck addition on to the back of the unit.

84. Plaintiffs were ready and able to pay for the construction of the modifications.

85. Defendant BHVC denied the reasonable modification request on October 16, 2017, stating that they were aware that Plaintiffs were making a request for reasonable modification, but they were denying the request anyway.

**FOURTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604(c)**

86. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 85 above.

87. Defendant BHVC actions stated above constitute a violation of 42 U.S.C. § 3604(c) "To make, print, or publish ….. any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin."

88. Defendant Gary Estes, speaking as a board member of Defendant BHVC, told Plaintiffs that Defendant BHVC was going to make Beacon Hill Village a 55 and above community.

89. Defendant BHVC made comments to all in attendance at a Beacon Hill Village community meetings disparaging Plaintiffs after Plaintiffs filed a discrimination complaint with the Department of Housing and Urban Development.

**FIFTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3617**

90. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 89 above.

14

91. Defendant BHVC actions stated above constitute a violation of 42 U.S.C. § 3617 "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, … any right granted or protected by …" § 3603, 3604, 3605, or 3606 of this title.

92. Defendant BHVC comments to the residents of the community were designed to shame, embarrass, intimidate, and interfere with Plaintiffs' exercise of their rights protected by the Fair Housing Act.

<u>**CAUSES OF ACTION AS TO DEFENDANT BRENDA ESTES**</u>

<u>**FIRST CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 3604 (a)**</u>

93. Plaintiffs re-alleges and incorporates herein by reference paragraphs 1 through 92 above.

94. Plaintiffs Janet and Harold Patterson had their daughter and a grandchild under the age of 18 domiciled in their home as referenced in paragraphs ¶¶41-45 above; and under the Fair Housing Act, 42 U.S.C. § 3602(k)(1) have suffered damages and loss of civil rights as a result of Defendants Estes' discriminatory conduct.

95. Defendant Brenda Estes' actions described above constitute a violation of 42 U.S.C. § 3604(a) " ….. to otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

96. Defendants Brenda Estes' demanded her husband, Defendant Gary Estes acting in his individual capacity, withdraw his signature on Plaintiffs' request for reasonable modification, motivated, at least in part, by the presence of a child domiciled at the Plaintiffs' home; which resulted in Defendant HOA denying the request.

15

## SECOND CAUSE OF ACTION:  VIOLATION OF U.S.C. § 3604(b)

97.  Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 96 above.

98. Defendant Brenda Estes' actions stated above constitute a violation of 42 U.S.C. § 3604(b) "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, ….. because of race, color, religion, sex, familial status, or national origin."

99. Defendant Brenda Estes would not have demanded Defendant Gary Estes  withdraw his signature from Plaintiffs' application to modify their deck if Plaintiffs did not have children domiciled in their home.

## THIRD CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 3604(c)

100.    Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 99 above.

101.    Defendant Brenda Estes' actions stated above constitute a violation of 42 U.S.C. § 3604(c) "To make, print, or publish ….. any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin."

102.    Defendant Brenda Estes' made statements that she did not want to live next door to families with children.

## FOURTH CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 3617

103. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 102 above.

104.    Defendant Brenda Estes' actions stated above constitute a violation of 42 U.S.C. § 3617 "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, … any right granted or protected by …" § 3603, 3604, 3605, or 3606 of this title.

105.    Defendant Brenda Estes caused Defendant BHVC to reject Plaintiffs' request for reasonable modification when she demanded Defendant Gary Estes to withdraw his signature.   This was motivated by the presence of children domiciled next door at Plaintiffs' home.


**CAUSES OF ACTION AS TO DEFENDANT GARY ESTES ACTING IN HIS INDIVIDUAL CAPACITY**

**FIRST CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 3604 (a)**

106.  Plaintiffs re-alleges and incorporates herein by reference paragraphs 1 through 105 above.

107.  Defendant Gary Estes, a member of the board of Defendant BHVC, resides next door to Plaintiffs and acted in his individual capacity during the interactions described below.

108.  Plaintiffs Janet and Harold Patterson had their daughter and a grandchild under the age of 18 domiciled in their home as referenced in paragraphs ¶¶41-45  above; and under the Fair Housing Act, 42 U.S.C. § 3602(k)(1) have suffered damages and loss of civil rights as a result of Defendant Gary Estes' discriminatory conduct while acting in his individual capacity.

109.  Defendant Gary Estes' actions, while acting in his individual capacity and described above, constitute a violation of 42 U.S.C. § 3604(a) " ….. to otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

17

110. Defendant Gary Estes withdrew his signature on Plaintiffs' request for reasonable accommodation because of Defendant Brenda Estes' demand; and because of the presence of children domiciled in Plaintiffs' home

111. The lack of a neighbor's signature, namely that of Defendant Gary Estes acting in his individual capacity, caused Defendant BHVC to deny Plaintiffs' reasonable modification request.

a. **SECOND CAUSE OF ACTION:  VIOLATION OF U.S.C. § 3604(b)**

112. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 111 above.

113. Defendant Gary Estes' actions stated above constitute a violation of 42 U.S.C. § 3604(b) "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, ….. because of race, color, religion, sex, familial status, or national origin."

114. Defendant Gary Estes would not have acquiesced to Defendant Brenda Estes' demand that he withdraw his signature if Plaintiffs did not have children domiciled in their home.

a. **THIRD CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 3604(c)**

115. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 114 above.

116. Defendant Gary Estes' actions stated above constitute a violation of 42 U.S.C. § 3604(c) "To make, print, or publish ….. any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin."

117. Defendant Gary Estes, acting in his individual capacity, told Plaintiffs that he and Defendant Brenda Estes did not want to live next door to children.

118. Defendant Gary Estes made derogatory comments to Plaintiffs' daughter regarding her pregnancy.


a. **FOURTH CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3617**

119. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 118 above.

120. Defendant Gary Estes' actions, in his individual capacity as next door neighbor to Plaintiffs', stated above constitute a violation of 42 U.S.C. § 3617 "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, … any right granted or protected by …" § 3603, 3604, 3605, or 3606 of this title.

121. Defendant Gary Estes caused Defendant HOA to reject Plaintiffs' request for reasonable modification when he withdrew his signature from Plaintiffs'. This was motivated by the presence of children domiciled next door at Plaintiffs' home.

122. Acting in his individual capacity, Defendant Gary Estes went door-to-door encouraging the other neighbors to also withdraw their signatures from Plaintiffs' application for reasonable modification.


**123. CAUSES OF ACTION WITH REGARD TO DEFENDANT DAVID FLOYD**

**FIRST CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604 (f)(1)**

124. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 122 above.

125. In 1988, Congress amended the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* to extend the guarantee of fair housing to individuals with disabilities.

126. Plaintiff Harold Patterson is a person with handicaps under the Fair Housing Act, 42 U.S.C. § 3602(d) and (h), and has suffered damages and loss of civil rights as a result of Defendants' discriminatory conduct.

127. Defendants' actions described above constitute a violation of 42 U.S.C. 3604(f)(1), "…… to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap ….."

128. Defendant Floyd chaired the meeting on October 3, 2017 during which time the Pattersons made their plea in person to the BOD; explaining that the proposal was a reasonable modification request made necessary because of Plaintiff Harold Patterson's disabilities.

129. Defendant Floyd wrote the email to the Pattersons denying their request for reasonable modifications thereby making their home unavailable to the Pattersons.

**SECOND CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604 (f)(2)**

130. Plaintiffs re-alleges and incorporates herein by reference paragraphs 1 through 128 above.

131. Defendants' actions described above constitute a violation of 42 U.S.C. 3604 § (f)(2), "…. Discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, ….. because of a handicap…,".

132. Defendant Floyd, as property manager and in concert with Defendant HOA, has approved basement renovations for non-disabled residents that are similar or even more extensive than Plaintiffs' design.

133. Defendant Floyd, as property manager and in concert with Defendant HOA, has failed to penalize non-disabled residents of the community who renovated their basement without prior consent of the BHVC.

20

## THIRD CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 3604 (f)(3)(A)

134. Plaintiffs re-alleges and incorporates herein by reference paragraphs 1 through 132 above.

135. Defendants' actions described above constitute a violation of 42 U.S.C. § 3604 (f)(3)(A) "…… discrimination includes (A) a refusal permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied ……  if such modifications may be necessary to afford such person full enjoyment of the premises….".

136. Plaintiffs submitted plans to Defendant Floyd as he chaired the meeting October 3, 2017 with a request to modify the basement area of their condominium and build a deck addition on to the back of the unit.

137. Plaintiffs were ready and able to pay for the construction of the modifications.

138. Defendant Floyd sent an email to Plaintiffs stating that their request for reasonable modification had been denied.

139. Defendant Floyd never responded to Plaintiffs' request for more information.

## FOURTH CAUSE OF ACTION:  VIOLATION OF 42 U.S.C. § 3617

140. Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 138 above.

141. Defendant BHVC's actions stated above constitute a violation of 42 U.S.C. § 3617 "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, … any right granted or protected by …" § 3603, 3604, 3605, or 3606 of this title.

142. Defendant Floyd stated in his October 16, 2017 email to the Plaintiffs that they could resubmit a request for reasonable modification; but told Plaintiffs that without ALL their neighbors' signature, their request would not be considered.

143. This statement was intended to intimidate Plaintiffs because they knew that Defendant Gary Estes would not sign the request, nor would he recuse himself from harming their chances as he initially promised.

## REQUEST FOR RELIEF

WHEREFORE, PLAINTIFFS REQUEST THE FOLLOWING RELIEF:

1.    That they be allowed to file this Complaint and that process issue to the Defendants requiring each of them to respond within the time required by law;

2.    That an Order be issued declaring that the actions of the Defendants described above constitute a violation of the Fair Housing Act as Amended, 42 U.S.C. § 3601 *et seq*.;

3.    That an Order be issued enjoining the Defendants, their agents, employees, assigns, and all other persons in active concert or participation with them, from continuing to violate any provision of the Fair Housing Act as Amended, 42 U.S.C. § 3601 *et seq*.;

4.    That Plaintiffs have such further and general relief in the form of such affirmative steps as may be necessary to eliminate the effects of the Defendants' unlawful practices described herein and restoring the Plaintiffs to the position they would have occupied but for the Defendants' discriminatory conduct, pursuant to 42 U.S.C. § 3613 (c)(1);

5.    That Plaintiffs be awarded such damages as would fully compensate the Plaintiffs pursuant to 42 U.S.C. § 3613(c)(1); and,

6.     That Plaintiffs be awarded attorneys fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

7.     Plaintiffs pray for such additional relief as the interests of justice may require.

8.     Plaintiffs request a jury of six be empaneled to hear and try all fact issues presented in this case.

Respectfully submitted,

 **CRAIN LAW GROUP, PLLC.**

*/s/ Larry L. Crain*
Larry L. Crain
Tn. Supr. Crt. No. 9040
5214 Maryland Way
Suite 402
Brentwood, TN  37027
Tel.  615-376-2600
Fax. 615-345-6009
Larry@CSAFirm.com

TENNESSEE FAIR HOUSING COUNCIL

/s/ Kathy T. Trawick
Kathy T. Trawick
107 Music City Cir.
Nashville, TN 37214
(615) 874-2344
Kathy@tennfairhousing.org

*Counsel for the Plaintiffs*

23